**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GERALDO GALVAN and LOURDES GALVAN,

    Plaintiffs,

v.

HONEYWELL INTERNATIONAL, INC., a Delaware Corporation, and JEFFREY COON, an individual,

    Defendants.
    _____/

CASE NO. 07-12670

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants' Motion for Summary Judgment (Doc. No. 57). The Court heard oral argument on April 16, 2009, and at the conclusion of the hearing took this matter under advisement. For the reasons that follow, Defendants' Motion is **GRANTED**.

**I. FACTS**

Plaintiffs Geraldo Galvan (hereinafter "Galvan") and Lourdes Galvan[1] allege that Defendant Honeywell International, Inc. and its employee, Jeffrey Coon, are responsible for the injuries suffered by Galvan when he fell off a roof because they failed to take reasonable safety precautions. Honeywell International, Inc. ("Honeywell") acted as general contractor on the site. Lutz Roofing Co. ("Lutz"), a subcontractor at the site,

---

[1] Lourdes Galvan's only claim is loss of consortium. Because her claim is wholly derivative of her husband's claims, the Court does not discuss it separately.

employed Galvan.  The facts giving rise to the Complaint follow.

Honeywell and Algonac Community schools entered into a contract for an energy upgrade at Algonac High School on June 8, 2004.  Defendant Jeffrey D. Coon signed the contract on behalf of Honeywell.  Thereafter, Honeywell subcontracted with Lutz for the roofing work.  See Def.'s Ex. G.  Pursuant to the subcontract agreement, Lutz agreed to take reasonable steps to protect the safety of its employees.  Specifically, it agreed to implement appropriate safety measures on its work at the site, including establishing "safety rules, posting applicable warnings and notices, erecting safety barriers, and establishing proper notice procedures to protect persons and property at the site and adjacent thereto from injury, loss, or damages." Id., at § 8.19.  Honeywell retained the right to stop any part of the subcontract work deemed "unsafe until corrective measures satisfactory to Honeywell shall have been taken."  Def.'s Ex. B, p. 6.

On July 14, 2004, Galvan was on the roof installing a pressure bar and flashing.  He was not working on an exposed edge, but in a location where the roof met a short parapet wall.  Galvan testified that he left the area where had been working and went to get a drink of water from his lunch box, which was in the middle of the roof.  Defs.' Ex. O, Galvan Dep. at 37.  He was walking toward the next area where he was to work when his boot became stuck in tar that had not been covered by gravel.  This occurred near the edge of the roof, and Galvan lost his balance and fell to the concrete below.  He injured his wrists and had surgery.  Although he returned to work briefly as a driver, Galvan claims he can no longer work.  Id. at 67, 68.

Galvans filed suit on May 25, 2007, against Honeywell and its employee Jeffrey

Coon. Defendants removed on the basis of diversity of citizenship, claiming Coon was fraudulently joined. Plaintiffs did not dispute this contention.

## II.  STANDARD OF REVIEW

Rule 56(c) states that summary judgment "should be rendered if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In other words, the movant must show that it would prevail on the issue even if all factual disputes are conceded to the nonmovant. Additionally, for the purposes of deciding on a motion for summary judgment, a court must draw all inferences from those facts in the light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.  ANALYSIS

There is no dispute that Plaintiffs have no claim as to Defendant Coon, and there has been no opposition to Defendants' request for his dismissal from this law suit. Two issues raised in the pleadings remain: whether Honeywell bears responsibility for the alleged safety omissions in this case, and, whether Galvan was a third-party beneficiary of Honeywell's contract with Lutz. Each is discussed below.

### A. Duties of a General Contractor

Under Michigan law, a general contractor is not liable for the negligence of its subcontractor unless the common work area doctrine applies. As the Michigan Supreme

Court explained in Funk v. Gen. Motors Corp., 220 N.W.2d 641, 646 (1974), overruled in part on other grounds by Hardy v. Monsanto Enviro-Chem Sys., Inc., 323 N.W.2d 270 (Mich. 1982).

> We regard it to be part of the business of a general contractor to assure that reasonable steps within its supervisory and coordinating authority are taken to guard against readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen.

The Funk Court identified the considerations resulting in the doctrine.

> [A]s a practical matter in many cases only the general contractor is in a position to coordinate work or provide expensive safety features that protect employees of many or all of the subcontractors. . . . [I]t must be recognized that even if subcontractors and supervisory employees are aware of safety violations they often are unable to rectify the situation themselves and are in too poor an economic position to compel their superiors to do so.

Id. Thus, under the doctrine, a general contractor may be held liable for injuries caused by dangers in common work areas. To succeed on the claim, a plaintiff must show four elements: (1) the defendant contractor failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workers (4) in a common work area. Latham v. Barton Malow Co., 746 N.W.2d 868, 870 (Mich. 2008).

Because the Court is satisfied that no genuine issue of material fact exists as to the third element, it directs its attention immediately to that factor--whether a high degree of risk to a significant number of workers existed.

To satisfy this element, a plaintiff must show, among other things, that a danger on the job created a high degree of risk to "a significant number of workmen." Ormsby v.

Capital Welding, Inc., 684 N.W.2d 320, 326 (Mich. 2004). The parties disagree as to the number of workers that were on the roof when Mr. Galvan was injured.

According to Plaintiffs, usually 15 to 16 Lutz employees were on the roof, not including sheet metal workers. The Court declines Plaintiffs' invitation to look at the number of workers potentially on the roof. The "high degree of risk to a significant number of workers must exist when the plaintiff is injured; not after construction has been completed." Ormsby, 684 N.W.2d at 329, n.12 (noting that the fact that one worker was below the plaintiff when he fell does not establish a genuine issue of material fact regarding whether a high degree of risk to a significant number of workers existed). Under Ormsby, the Court should not focus on the number of workers the day before or the day after Galvan's fall. The risk must exist when Mr. Gavin was injured.

In addition, Plaintiffs contend that there were six workers on the roof when Galvan fell. This assertion is not supported by the deposition testimony cited in their brief or the exhibits, and the Court finds the evidence, even viewed in the light most favorable to Plaintiff, shows at most, there were four workers on the roof when Plaintiff fell. Galvan was working with two other roofers, Victor Flores and John Pyrzewski. Pls.' Ex. 15, Expert Report , ¶ 3; Pls.' Ex. 26, p. 42. Although Plaintiffs assert that there were three sheet metal workers on the roof, the record reveals that only one sheet metal worker was on the roof the day the incident occurred. David Clark had been on the roof in a different area, but he was down in the courtyard when Galvan fell. Defs.' Ex. F, Clark Dep. at 27. The other sheet metal workers had gone to check on another job and were not present when Mr. Galvan fell. Defs.' Ex. G, Pls.' Ex. 4. Consequently, even if eight employees had been

on site the morning of the incident, the record does not support the individuals who showed up for work did in fact work on the roof that day.

This small number is fatal to Plaintiffs' claim. In <u>Veness v. Town Center Development, LLC</u>, 2007 WL 2192673 (Mich. Ct. App. July 31, 2007), the court found a <u>Funk</u> claim deficient on the third element based on the following facts: on the day of the incident, a Sunday, the plaintiff was the only worker on any of the balconies. Accordingly, the fact that many workers used the balconies as work platforms during the course of the construction project, was relevant only to the question of whether the balconies constituted a common work area. In its decision, the court reinforced that the assessment of the existence of a danger to a significant number of workers should be calculated at the time the plaintiff is injured. <u>Accord</u> <u>Ormsby</u>, <u>supra</u> at 329, n 12.

Similarly, In <u>Hughes v. PMG Bldg, Inc.</u>, 574 N.W.2d 691, 695 (Mich. Ct. App. 1997), the state court concluded that, where only four men were exposed to a risk, the defendant had "not breach[ed] its duty to guard against a danger posing a 'high degree of risk to a significant number of workmen." In reaching this conclusion, the <u>Hughes</u> court distinguished <u>Funk</u>. "Liability was imposed on the general contractor in <u>Funk</u> because the plaintiff fell from a highly visible superstructure that . . . posed a risk to thousands of other workers." <u>Hughes</u>, 574 N.W.2d at 694. Based upon a risk analysis, the <u>Funk</u> Court concluded that liability should not be imputed unless the dangers in the work area involve "a high degree of risk to a significant number of workers." <u>Funk</u>, <u>supra</u> at 104. Accordingly, subsequent decisions applying the analysis turn on the existence of more than a handful of workers. <u>See</u> <u>e.g.</u> <u>Plummer v. Bechtel Constr Co.</u>, 489 N.W.2d 66, 68 (Mich. 1992) (the plaintiff fell from an interconnecting catwalk/platform system at a construction

project involving 2,500 workers and a number of subcontractors); Erickson v Pure Oil Corp., 249 N.W.2d 411 (Mich. Ct. App. 1976), abrogated on other grounds in Ormsby, supra, (the plaintiff fell from a roof used by numerous subcontractors when he slipped on oiled metal roof sheets); Faulman v. American Heartland Homebuilder, No. 269287, 2007 WL 29237 at *2 (Mich. Ct. App. Jan. 4, 2007) (only seven employees were routinely present in the condo where the accident took place, and only 15 were present when the wall was being raised)). Compare Groncki v. Detroit Edison Co., 557 N.W.2d 289, 298 (Mich. 1996) (finding genuine issue of material fact existed where a plaintiff alleged that most or all the workers on a jobsite passed along a driveway directly beneath an allegedly dangerous power line).

Based on the relevant case law, the Court concludes that in this case Plaintiffs failed to establish a question of fact on the third element. They cannot establish this claim, given the small number of workers that were exposed to the danger. Because Plaintiffs must satisfy all four elements of the Funk test, the Court directs its attention to Plaintiffs alternate theory of liability.

### B. Third-Party Beneficiary

The parties dispute whether Galvan was a third-party beneficiary under the contract. Under the agreement, Honeywell was contractually obligated to "comply with all applicable federal, state, and municipal laws and regulations with regard to health and safety of workers, consultants," and obliged to "take such measure as required by those laws and regulations to prevent injury and accidents to other persons or, about or adjacent to the site of the work." Pls.' Ex. 1, Honeywell contract at ¶ 2.2.4, pp. 3, 4, 6-7. According to Plaintiffs, Honeywell breached this duty because it failed to discover and correct that lack

7

of proper fall protection on the roof.

Here, there is no dispute that Galvan is not a party to the Honeywell-Algonac school contract. A person is a third-party beneficiary of a contract when the contract establishes that a promise has been undertaken directly to or for that person. Schmalfeldt v. North Pointe Ins. Co., 670 N.W.2d 651 (Mich. 2003). A court must look no further than the contract itself to determine whether a party is an intended third-party beneficiary within the meaning of MICH. COMP. LAWS § 600.1405. Schmalfeldt, supra at 654-55. Consequently, Plaintiffs cannot maintain an action upon the contract merely because Galvan is injured by an alleged breach. "Contractors, subcontractors, and their employees are generally held not to be the third-party beneficiaries of the contract between the general or supervisory contractor and the project owner." Dynamic Constr. Co. v. Barton Malow Co., 543 N.W.2d 31 (Mich. Ct. App. 1995). Under Michigan law, this category of individuals are considered to be incidental beneficiaries of the contract. Id.

In this case, Plaintiffs have failed to provide any evidence that Honeywell made any promise on behalf of Galvan. Nor has evidence been advanced to support that Galvan, a subcontractor's employee, was anything other than an incidental beneficiary, with no rights under the contract. Therefore, this claim fails as a matter of law.

### IV. CONCLUSION

Plaintiffs cannot establish, as a matter of law, that a significant number of workers were exposed to a high degree of risk. Nor can Plaintiffs establish that Galvan was a third-party beneficiary.

Accordingly, the Court **GRANTS** Defendant's motion.

**IT IS SO ORDERED.**

                                              s/Marianne O. Battani
                                              MARIANNE O. BATTANI
                                              UNITED STATES DISTRICT JUDGE

Date:  May 21, 2009

## CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

                                              s/Bernadette M. Thebolt
                                              Case Manager